UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GS HOLISTIC, LLC,

    Plaintiff,

v.

MSA-BOSSY INC, et al.,

    Defendants.

Case No. 22-cv-07638-JSC

**ORDER RE: MOTION FOR DEFAULT JUDGMENT**

Re: Dkt. No. 16

GS Holistic, LLC alleges MSA-Bossy Inc., doing business as High Life Smoke Shop, and its owner, Athar Abbasi, have infringed its trademarks. (Dkt. No. 1.)[1] The Clerk entered default after Defendants failed to appear or otherwise defend against this case. (Dkt. No. 14.) Plaintiff now moves for default judgment under Federal Rule of Civil Procedure 55(b)(2). (Dkt. No. 16.) After carefully considering the briefing, the Court concludes oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the May 31, 2023 hearing, and GRANTS the motion in part. To the extent Plaintiff seeks a permanent injunction it must file a supplemental memorandum that addresses why such relief is appropriate.

## COMPLAINT ALLEGATIONS

Plaintiff, a Delaware company with its principal place of business in California, makes and sells smoking products. It is the registered owner of three Stündenglass trademarks:

    a. U.S. Trademark Registration Number 6,633,884 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 011.

    b. U.S. Trademark Registration Number 6,174,292 for the design plus

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

     words mark "S" and its logo in association with goods further identified in the registration in international class 034.

     c. U.S. Trademark Registration Number 6,174,291 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 034.

(Dkt. No. 1 ¶ 11.) Plaintiff has continuously marketed and sold smoking products, like glass infusers and accessories, under the trademarks for about two years. (*Id.* ¶¶ 8–10, 13.) Plaintiff sells to about 3,000 authorized stores in the United States, including in California. (*Id.* ¶ 20.) The Stündenglass brand is "widely recognized nationally and internationally" and "known for high quality and innovation," "focusing on scientific principles which facilitate a superior smoking experience." (*Id.* ¶¶ 8–9; *see id.* ¶¶ 14–19.) A Stündenglass glass infuser costs $599.95, at the high end of the market price range for infusers, $199 to $600. (*Id.* ¶ 21.) "[T]he U.S. marketplace is saturated with counterfeit products" that trade on the brand's goodwill. (*Id.* ¶¶ 23–24, 35.)

    High Life Smoke Shop is a retail store in San Jose, California. (*Id.* ¶ 6.) Mr. Abbasi "owned, managed, and/or operated" the store, with the authority to purchase products for resale, decide which products to offer, hire and fire employees, and control the finances and operations. (*Id.* ¶¶ 7, 32.) Defendants have manufactured and/or sold counterfeit Stündenglass glass infusers. (*Id.* ¶¶ 25–28.) For example, on October 14, 2022, Plaintiff's investigator bought a glass infuser with a counterfeit Stündenglass mark from Defendants for $514.00. (*Id.* ¶¶ 29–31.) Defendants began using the marks "long after" they were registered. (*Id.* ¶ 33.) The counterfeit marks are likely to cause customer confusion and divert sales from legitimate Stündenglass retailers. (*Id.* ¶¶ 36–49.)

    Plaintiff brings claims for "trademark counterfeiting and infringement" in violation of 15 U.S.C. § 1114 and for "false designation of origin and unfair competition" in violation of 15 U.S.C. § 1125(a). (*Id.* ¶¶ 53–70.) It seeks statutory and treble damages, costs, preliminary and permanent injunctive relief, and other equitable relief. (*Id.* at 13–14.) The motion for default judgment seeks $50,000 in statutory damages for each of the three trademarks, along with $1,111 in costs.

//

//

**DISCUSSION**

**I.    JURISDICTION & SERVICE OF PROCESS**

**A.    Subject Matter Jurisdiction & Personal Jurisdiction**

Courts must examine both subject matter and personal jurisdiction when default judgment is sought against a non-appearing party. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Here, the Court has federal question subject matter jurisdiction because the complaint presents Lanham Act claims.

Courts have general personal jurisdiction over defendants domiciled in their district. *See Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014) (explaining general jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (*e.g.*, domicile)"). The complaint alleges MSA-Bossy has its principal place of business in the Northern District of California. (Dkt. No. 1 ¶ 6.) Thus, the Court has general jurisdiction over MSA-Bossy. "Serving a summons . . . establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Here, service of the summons on MSA-Bossy establishes personal jurisdiction. (Dkt. No. 9); *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (noting a corporation's principal place of business is paradigm basis for exercise of personal jurisdiction).

The complaint alleges Mr. Abbasi resides in California. (Dkt. No. 1 ¶ 3.) Accordingly, the Court has general jurisdiction and service of the summons establishes personal jurisdiction. (Dkt. No. 10); *see* Fed. R. Civ. P. 4(k)(1)(A); *Walden*, 571 U.S. at 283 n.6.

**B.    Service of Process**

"[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). The Court must assess whether Defendants were properly served with notice of this case, because improper service may explain their failure to appear. *See Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008).

Rule 4(h) provides that a corporation may be served in the same manner prescribed by

Rule 4(e)(1) for serving an individual, which allows for service in accordance with California law. Fed. R. Civ. P. 4(h), 4(e)(1). Under California law, a corporation may be served by delivering a copy of the summons and the complaint to the "person designated as agent for service of process." Cal. Code Civ. P. § 416.10(a). Here, Plaintiff effected personal service on MSA-Bossy's registered agent, Mr. Abbasi, on February 10, 2023. (Dkt. No. 9.)

Rule 4(e) provides that an individual may be served by personally delivering the summons and complaint. Fed. R. Civ. P. 4(e)(2)(A). Plaintiff effected personal service on Mr. Abbasi on February 10, 2023. (Dkt. No. 10.)

Accordingly, service on each Defendant was adequate.

## II. DEFAULT JUDGMENT

After entry of default, the Court may grant default judgment on the merits of the case. Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a discretionary one," *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980), guided by the following factors:

> (1) the possibility of prejudice to the plaintiff[;] (2) the merits of plaintiff's substantive claim[;] (3) the sufficiency of the complaint[;] (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect[;] and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Here, the *Eitel* factors weigh in favor of granting default judgment.

### A. Possibility of Prejudice to Plaintiff

The first factor considers whether the plaintiff will suffer prejudice, such as being left without a legal remedy, if the Court declines to enter default judgment. Here, because Defendants did not respond to the complaint, Plaintiff's only recourse for its claims of trademark infringement is default judgment. *See, e.g.*, *Fudy Printing Co., Ltd. v. Aliphcom, Inc.*, No. 17-cv-03863-JSC, 2019 WL 2180221, at *3 (N.D. Cal. Mar. 7, 2019); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054–55 (N.D. Cal. 2010). Therefore, this factor weighs in favor of default judgment.

**B.     Merits of Plaintiff's Substantive Claims & Sufficiency of the Complaint**

The second and third factors, "often analyzed together," require the plaintiff "to plead facts sufficient to establish and succeed upon its claims." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010); *Craigslist*, 694 F. Supp. 2d at 1055. After entry of default, the factual allegations in the complaint related to liability are accepted as true and deemed admitted. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "However, it follows from this that facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). "The district court is not required to make detailed findings of fact." *Fair Hous. of Marin*, 285 F.3d at 906.

### 1.     Trademark Infringement

The elements of a claim for trademark infringement are: (1) the plaintiff has a protectable ownership interest in a valid mark; and (2) the alleged infringer's use of the mark "is likely to cause confusion, or to cause mistake, or to deceive consumers." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006) (cleaned up); *see* 15 U.S.C. § 1114(1).

"Registration of a mark is prima facie evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in connection with the goods specified in the registration. When proof of registration is uncontested, the ownership interest element of a trademark infringement claim is met." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (cleaned up). Plaintiff meets the first element by alleging three registered marks. (Dkt. No. 1 ¶ 11.)

"Likelihood of confusion exists when consumers viewing the mark would probably assume that the goods it represents are associated with the source of a different product identified by a similar mark." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608 (9th Cir. 2005). Likelihood of confusion "generally rel[ies] on an eight-factor test . . . : 1) the strength of the mark; 2) proximity or relatedness of the goods; 3) the similarity of the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) the degree of care customers are likely to exercise in purchasing the goods; 7) the defendant's intent in selecting the mark; and 8) the

likelihood of expansion into other markets." *Id.* But "[t]he factors should not be rigidly weighed; . . . [they] are intended to guide the court in assessing the basic question of likelihood of confusion." *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1993). Here, accepting the complaint's factual allegations as true, a reasonably prudent consumer would likely be confused as to the origin of the glass infuser sold by Defendants on October 14, 2022. The goods are closely related (i.e., Plaintiff sells infusers), and Defendants' intent to confuse can be inferred from their pricing the infuser at a similar price point to Plaintiff's. However, the complaint plausibly alleges only one product offered for sale with only one infringing mark on it. (*See* Dkt. No. 1 ¶¶ 30–31.) Accordingly, Plaintiff meets the confusion element, but as to only one of its three trademarks.

### 2. False Designation of Origin

The elements of a claim for false designation of origin are: the defendant "(1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015); *see* 15 U.S.C. § 1125(a); *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902–04 (9th Cir. 2007).

The elements of false designation of origin are similar to trademark infringement. *See Brookfield Commc'ns, Inc. v. W. Coast. Ent. Corp.*, 174 F.3d 1036, 1046 nn.6 & 8 (9th Cir. 1999); *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1980). Therefore, courts have treated them as claims that rise and fall together. *Freecycle Network*, 505 F.3d at 902–04; *Vinh-Sanh Trading Corp. v. SFTC, Inc.*, No. 19-cv-04315-CRB, 2021 WL 3037706, at *8 (N.D. Cal. July 19, 2021); *Luxul Tech.*, 78 F. Supp. 3d at 1170; *Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F. Supp. 3d 755, 766 n.3 (C.D. Cal. 2015). Because Plaintiff's claim of trademark infringement is adequate for purposes of the second and third *Eitel* factors as to one trademark, so too for its claim of false designation of origin.

### C. Money at Stake

The fourth factor considers the amount of money at stake in relation to the seriousness of

the defendant's conduct. *Eitel*, 782 F.2d at 1471–72. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in light of defendant's actions." *Tech. LED Intellectual Prop., LLC v. Revogi, LLC*, No. 18-CV-03827-JSC, 2019 WL 2716610, at *4 (N.D. Cal. June 27, 2019) (cleaned up). "Conversely, default judgment may be appropriate where it is tailored to the defendant's specific misconduct." *Id.* (cleaned up). Unlike liability, the Court need not accept as true complaint allegations related to damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

Here, Plaintiff seeks $150,000 in damages, $50,000 for each of three trademark infringements. The request consists entirely of statutory damages. 15 U.S.C. § 1117(c) (authorizing $1,000 to $200,000 per mark, or up to $2,000,000 per mark for a willful violation). The amount of money at stake is tailored—by Congress—to the underlying misconduct. Subject to the specific remedies analysis below, the amount at stake generally weighs in favor of default judgment.

### D. Possibility of a Dispute Concerning Material Facts

There is no indication the material facts are in dispute. The well-pleaded allegations in the complaint as to liability are deemed admitted. *Geddes*, 559 F.2d at 560. In the absence of any likely factual disputes, this factor weighs in favor of default judgment.

### E. Excusable Neglect

"This factor favors default judgment where the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012). Defendants were properly served with the summons and complaint more than four months ago. Therefore, this factor weighs in favor of default judgment.

### F. Strong Policy Favoring Decisions on the Merits

"Our starting point is the general rule that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Thus, the seventh *Eitel* factor, by definition, weighs against entering default judgment. Here, "Defendant[s'] failure to answer Plaintiff['s] complaint makes a decision on the merits

impractical, if not impossible," making default judgment appropriate notwithstanding the policy against it. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

\* \* \*

In sum, six of the seven *Eitel* factors weigh in favor of granting default judgment.

## III. REMEDIES

Plaintiff seeks statutory damages, costs, and a permanent injunction. That accords with the relief demanded in the complaint, so Defendants are fairly on notice of their potential liability. Fed. R. Civ. P. 54(c); *see In re Ferrell*, 539 F.3d 1186, 1192–93 (9th Cir. 2008).

### A. Statutory Damages

The Court may award statutory damages between $1,000 and $200,000 for each trademark infringement, or up to $2,000,000 for willful violations, "as the court considers just." 15 U.S.C. § 1117(c). The Court has discretion to award statutory damages between the minimum and maximum, so long as they are sufficient to deter future trademark infringement. *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1274–75 (9th Cir. 1982); *see Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 992 (9th Cir. 2009) (explaining, in related context of copyright infringement, that "statutory damages further compensatory and punitive purposes"). "In determining the appropriate amount of statutory damages to award on default judgment, courts in this district have considered whether the amount of damages requested bears a plausible relationship to Plaintiff's actual damages." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102 (N.D. Cal. 2014) (cleaned up). "While a plaintiff in a trademark or copyright infringement suit is entitled to damages that will serve as a deterrent, it is not entitled to a windfall." *Id.*

Plaintiff seeks $150,000 in statutory damages, $50,000 for each of three marks. But it establishes only one sale, with one infringing mark, at the price of $514. (*See* Dkt. No. 1 ¶¶ 30–31.) Plaintiff's evidence of actual damages amounts to two paragraphs in its CEO's declaration:

> In 2020, GS' total sales for its Stündenglass products were approximately $1,700,000.00 in the United States of America. In 2021, sales were approximately $9,600,000.00.
>
> Through research, GS HOLISTIC, LLC has determined that at least 3 out of every 10 products sold is a counterfeit. Based on the industry knowledge of AFFIANT, if the market had not been impacted by the

8

>flood of inferior, mass-produced fake Stündenglass products, GS HOLISTIC, LLC's 2021 sales would have been approximately $38,400,000.00.

(Dkt. No. 16-2 ¶¶ 15–16.) These bare-bones conclusions do not meet Plaintiff's burden to demonstrate actual damages above $514. *See Geddes*, 559 F.2d at 560. Moreover, courts may consider deterrence, but must base a damages award on the particular defendant's violation. Here, Defendants should not be responsible for other trademark violations by other retailers across the market.

Plaintiff's request is out of all proportion to its actual damages. *Cf. Adobe Sys., Inc. v. Taveira*, No. C 08–2436 PJH, 2009 WL 506861, at *5–6 (N.D. Cal. Feb. 27, 2009) (awarding $50,000 per willful violation where plaintiffs showed defendants made thousands of sales). Where a plaintiff cannot reasonably estimate actual damages, and especially where it shows only a few sales related to the counterfeit mark, courts are disinclined to award the maximum statutory damages at the risk of a windfall. *See Yelp*, 70 F. Supp. 3d at 1103 (one sale); *Adobe Sys., Inc. v. Tilley*, No. C 09–1085 PJH, 2010 WL 309249, at *4 (N.D. Cal. Jan. 19, 2010) (one sale); *Microsoft Corp. v. Ricketts*, No. C 06–06712 WHA, 2007 WL 1520965, at *4 (N.D. Cal. May 24, 2005) (three sales).

Under the circumstances, an award of $5,000 is just. *See* 15 U.S.C. § 1117(c). It is above the statutory minimum, represents almost ten times the price of the only sale at issue, and serves a deterrent purpose while avoiding a windfall. Accordingly, the Court awards $5,000.00 in statutory damages.

**B.     Costs**

The Court "shall," "subject to the principles of equity," award "the costs of the action" to a plaintiff who establishes a trademark violation. 15 U.S.C. § 1117(a).

Plaintiff seeks $1,111 in costs, composed of the filing fee ($402), process server fee ($130), and unexplained "investigation fees" ($579). (Dkt. No. 16-3 ¶ 6.) Filing and service of process expenses are reasonable and routinely awarded. *See, e.g.*, *Facebook, Inc. v. Sahinturk*, No. 20-CV-08153-JSC, 2022 WL 2239841, at *2 (N.D. Cal. June 17, 2022); *3M Co. v. G7 Env't, LLC*, No. CV 20-8892 PA-AFMX, 2021 WL 2935659, at *10 (C.D. Cal. June 9, 2021). However,

9

Plaintiff does not cite any authority for shifting the cost of pre-suit investigation to Defendants. The plain language "the costs of the action," 15 U.S.C. § 1117(a), is limited to costs incurred after "the action"—the court case—has begun. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012) ("Because taxable costs are limited by statute and are modest in scope, we see no compelling reason to stretch the ordinary meaning of the cost items Congress authorized [from oral interpretation to document translation]."); *Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc.*, 741 F.3d 955, 958 (9th Cir. 2013) (applying *Taniguchi*).

Accordingly, the Court awards costs in the amount of $532.00.

### C. Permanent Injunction

The Court may order permanent injunctive relief "to prevent the violation of any right of the registrant of a mark." 15 U.S.C. § 1116(a). A plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) ("[A]ctual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action.").

Plaintiff's complaint and proposed judgment include a permanent injunction, (Dkt. No. 1 at 13–14; Dkt. No. 16-4), but the motion for default judgment does not address it. As such, Plaintiff has not met its burden for a permanent injunction, particularly the requirement of actual, irreparable harm. *See adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756–57, 759–61 (9th Cir. 2018). If Plaintiff still seeks a permanent injunction, it may file a supplemental memorandum in support of default judgment on or before May 25, 2023. The Court will defer entry of final judgment until after that date.

### CONCLUSION

Plaintiff's motion for default judgment is GRANTED in part. The Court awards statutory damages in the amount of $5,000.00 and costs in the amount of $532.00. The Court defers entry

of a permanent injunction unless and until Plaintiff files a supplemental memorandum explaining why it is entitled to such relief.  If no such memorandum is filed by May 25, 2023, the Court will enter final judgment of the statutory damages and costs.

This Order disposes of Docket No. 16.

**IT IS SO ORDERED.**

Dated: May 22, 2023

JACQUELINE SCOTT CORLEY
United States District Judge

11